Nott, J.,
concurring:
I exonerate the Quartermaster (3-eneral from all blame in this matter. When it had been much misrepresented and muddled, he made the following order:
“ QUARTERMASTER GENERAL’S OeEICE,
u November 18,1864.
“ General Thomas, please examine this case; it grows more complicated and difficult. It seems to me that it is desirable to arrive at the true value of the horses delivered, and to take some means to jiay the true owners or jiersons who actually delivered the horses. The commanding general ordered purchases, believing they were necessary to enable him to move into the enemy’s country, under orders from his superior. If he made a mistake, if unscrupulous persons imposed upon his •office, still there were horses delivered and used, and a fair price should be paid to the proper .creditor. The questions are the price and the persons to be paid.
“M. C. M.”
The case was further examined, and, upon the final report *395 recommending tlie payment of $150 a horse, tlie Quartermaster General endorsed tbis order:
“Let tbe accounts be settLed upon tbe terms recommended.
“ M. C. MEIGS,
“ Quartermaster General, Brevet Major General.
“February 20, 1865.”
Instead of obeying tbis order, by proffering a settlement to tbe claimants and procuring proper releases from tbem, a subordinate of tbe Quartermaster General coolly scratched out tbe amounts written in tbe cl aimant’s receipts, then in bis possession, wrote in their stead the reduced amounts, and, with no attempt whatever to protect tbe rights of tbe government, sent drafts for payment to tbe respective parties. His unauthorized alteration of tbe written instrument, over tbe signature of another, was n ot forgery, for there was no criminal intent; but tbe altered receipt was precisely as worthless as though be bad written and signed tbe contractor’s name to it himself. It is tbe defendants’ misfortune that the Quartermaster General’s order was not executed, and one of many instances where the government must suffer through tbe negligence of its officers.